UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMESE SIMON and
FLORIDA REHABILITATION
ASSOCIATES, PLLC,

    Plaintiffs,

v.                        Case No. 8:12-cv-236-VMC-AEP

HEALTHSOUTH OF SARASOTA
LIMITED PARTNERSHIP, et al.,

    Defendants.
_____/

## ORDER

    This matter comes before the Court upon consideration of Defendants Encompass Health Rehabilitation Hospital of Sarasota, LLC, HealthSouth Real Property Holdings, LLC, and HealthSouth Corporation's Motion to Exclude Expert Testimony of Dr. Darius Clarke (Doc. # 208), filed on November 17, 2020. Plaintiffs Emese Simon and Florida Rehabilitation Associates, PLLC, responded on December 14, 2020. (Doc. # 230). For the reasons that follow, the Motion is granted.

## I.   Background

    This is a False Claims Act ("FCA") retaliation case. Plaintiffs maintain that Defendants took adverse actions against Dr. Simon after she engaged in alleged protected activity, including complaining that "disuse myopathy" (DM)

1

was not a legitimate diagnosis to admit patients to a rehabilitation hospital.

In support of these claims, Plaintiffs have disclosed Dr. Darius Clarke, a former employee of a HealthSouth hospital in Virginia, as an expert. Notably, in addition to being disclosed as an expert in this case, Dr. Clarke was the plaintiff in a related FCA retaliation case against HealthSouth Corporation and Rehabilitation Hospital Corporation of America, LLC. See Clarke v. HealthSouth Corporation, 8:14-cv-778-VMC-AAS (M.D. Fla. 2014).

Dr. Clarke's expert report is in the form a declaration, including a narrative of his employment with HealthSouth Corporation and Rehabilitation Hospital Corporation of America, LLC in Richmond, Virginia. (Doc. # 208-1). The declaration notes Dr. Clarke's belief that HealthSouth Corporation and Rehabilitation Hospital Corporation of America, LLC engaged in fraud through their use of the DM diagnosis and that they retaliated against him for objecting to the alleged fraudulent use of the DM diagnosis during his employment. (Id.).

The only clear opinion Dr. Clarke advances in his declaration is as follows: "Based on my training and experience as a physician, it is my opinion that disuse

2

myopathy is not a valid diagnosis for patients and HealthSouth fabricated it solely for the purposes described above." (Id. at 3). Dr. Clarke reached this opinion as the "result of [his] conscientious examination of the subject over a period of time." (Id.). He notes that "[t]here are no gold standard medical texts or references that define, discuss, or detail the symptoms of such a diagnosis, and there are no standardized courses of treatment." (Id.).

Now, Defendants move to exclude Dr. Clarke as an expert. (Doc. # 208). Plaintiffs have responded (Doc. # 230), and the Motion is ripe for review.

## II.  Discussion

### A.    Rule 26(a)

Under Rule 26(a)(2)(B), an expert's report must contain six categories of information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants argue that Dr. Clarke's report should be excluded under Rule 37(c)(1) because it fails to include all the information required by Rule 26(a)(2)(B). (Doc. # 208 at 6-7). The Court agrees. Dr. Clarke's report, which is merely styled as a declaration, fails to include the required list of publications he has authored, exhibits he would use, a list of cases in which he has testified as an expert, or a statement of his compensation. (Doc. # 208-1). Additionally, as Defendants explain (Doc. # 208 at 6-7), Dr. Clarke's report fails to sufficiently explain the facts and data he relied on in his forming his opinion, as he does not identify what texts he considered or any specific data he reviewed. See Brown v.

Bray & Gillespie III Mgmt. LLC, No. 6:06-cv-556-Orl-22GJK, 2008 WL 2397601, at *7 (M.D. Fla. June 10, 2008)(finding that medical expert's report, which was in the form of 2-4 page letters, violated Rule 26(a)(2)(B) because he did "not indicate what particular facts or circumstances in these cases lead him to the opinions he holds" (citation omitted)).

In their response, Plaintiffs assert that Dr. Clarke's report completely complies with Rule 26(a). Plaintiffs insist that no exhibits were included because Dr. Clarke "does not intend to use any," "he has not published anything in the last 10 years," "he has never testified as an expert," and "no statement of compensation accompanies his report because he is not being paid for his opinion in this case." (Doc. # 230 at 9).

This is insufficient to satisfy Rule 26(a), which specifically requires this information be included. Dr. Clarke was required to provide all categories of information identified in Rule 26(a)(2)(B) in his expert report and easily could have done so. His failure to provide this information precludes introduction of his expert report unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Notably, Plaintiffs do not show that the failure was either substantially justified or harmless. (Doc. # 230 at 8-9). Thus, the Court cannot conclude that the failure was either substantially justified or harmless. Dr. Clarke's report is excluded.

### B.    Daubert

Alternatively, the Court concludes that Dr. Clarke's expert report is subject to exclusion under Federal Rule of Evidence 702.

That Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

6

District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

Here, Defendants only challenge Dr. Clarke's qualifications and reliability. (Doc. # 208).

## 1.  Qualifications

The first question under Daubert is whether the proposed expert witness, Dr. Clarke, is qualified to testify competently regarding the matters he intends to address. City

of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012)(quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001)(quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Defendants argue that Dr. Clarke is not qualified to offer an opinion on DM. (Doc. # 208 at 8). According to Defendants, Dr. Clarke's qualifications are limited and he "entirely fails to explain how his education and limited

8

experience at a HealthSouth rehabilitation hospital in Richmond, Virginia renders him qualified to give an Opinion regarding the validity of a diagnosis or for what purposes it was used [at] HealthSouth Sarasota." (Id. at 8-9).

The Court disagrees. Dr. Clarke clearly outlines his education and experience as a physician. (Doc. # 208-1 at 2-3). He is licensed to practice medicine in Texas, California, and Virginia, and is "board certified by the American Board of Physical Medicine and Rehabilitation in both Physical Medicine & Rehabilitation and Brain Injury Medicine." (Id.). Furthermore, Dr. Clarke worked as a medical director for a HealthSouth rehabilitation hospital in Virginia during 2009 and 2010, during which time he became exposed to the DM diagnosis. (Id. at 2). His responsibilities in that position included admission of patients to the hospital, including reviewing summaries of patients' cases "to determine whether the patient was qualified for admission to the hospital." (Id.).

Taken together, Dr. Clarke is at least minimally qualified to opine on the medical legitimacy of DM based on his education and experience as a rehabilitation physician.

However, the Court agrees with Defendants that Dr. Clarke is not qualified to render an opinion on whether

Defendants engaged in fraudulent activity. (Doc. # 208 at 9 n.5). Dr. Clarke, a rehabilitation physician, has no legal experience or training, and so he is not able to competently testify regarding whether conduct qualifies as fraud. See Tindall v. H & S Homes, LLC, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *6 (M.D. Ga. Aug. 7, 2012)(finding that an accounting and finance expert did "not have any legal experience or training that would qualify him to offer" an opinion regarding whether an entity could be considered an "alter ego" of a defendant). Furthermore, expert witnesses "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." Dahlgren v. Muldrow, No. 1:06-cv-65-MP-AK, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008). Instead, "[t]he determination of which law applies and what the law means is for the Court to decide." Id.

Thus, Dr. Clark may not opine on whether Defendants' use of the DM diagnosis was fraudulent or whether Defendants committed fraud. See Clarke v. HealthSouth Corp., No. 8:14-cv-778-VMC-AAS, 2021 WL 129821, at *6 (M.D. Fla. Jan. 14, 2021)("Dr. Groah's opinion that HealthSouth acted 'fraudulently' or 'made fraudulent claims' must be

excluded."). However, as mentioned previously, he is qualified to offer an opinion that DM is not a legitimate diagnosis.

### 2.  Reliability

The next question is whether Dr. Clarke's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)(citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the

11

witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

Defendants challenge the reliability of Dr. Clarke's expert report. (Doc. # 208 at 9-12). According to Defendants, Dr. Clarke failed "to apply any discernible, much less reliable, methodology in reaching his conclusory opinion" and his own deposition testimony in his FCA retaliation case "contradicts his conclusory opinion." (Id. at 9-10).

The Court agrees with Defendants. True, "[t]he Court is satisfied that a practicing rehabilitation physician could reliably form a conclusion on a disease in her field after reading relevant literature." Clarke, 2021 WL 129821, at *4. But, here, Dr. Clarke fails to specifically address the medical literature he reviewed. Cf. Id. (finding a rehabilitation physician had established a reliable methodology where she identified specific medical literature

in her expert report and had reviewed over 100 pages of documents in forming her various opinions).

And, while Dr. Clarke asserts that he reached his opinion over time through his experience as a Medical Director at a HealthSouth hospital, he fails to identify specific experiences or medical standards he relied on in determining that DM is not legitimate. See Dukes v. Georgia, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006)("Dr. Greifinger does not specify what experiences or what standards he relied upon in making any of these determinations. In order to find Dr. Greifinger's opinion testimony reliable and connected to scientific data, this court would need to take a leap of faith and rely on Dr. Greifinger's *ipse dixit* and assurance that his testimony is based on nationally accepted standards. . . . Accepting Dr. Greifinger's experience alone as evidence of the reliability of his statements is tantamount to disregarding entirely the reliability prong of the Daubert analysis."), aff'd 212 F. App'x 916 (11th Cir. 2006). While Dr. Clarke emphasizes that HealthSouth encouraged doctors to use the DM diagnosis and he opines that this was fraudulent, he does not sufficiently provide an explanation of how his *medical* experience — rather than his unpleasant employment experiences — led him to doubt the legitimacy of DM.

13

In short, Dr. Clarke has failed to establish a reliable methodology for his opinion that DM is not a legitimate medical diagnosis in his expert report. Accordingly, his testimony is also excluded for this reason.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Encompass Health Rehabilitation Hospital of Sarasota LLC, HealthSouth Real Property Holdings, LLC, and HealthSouth Corporation's Motion to Exclude Expert Testimony of Dr. Darius Clarke (Doc. # 208) is **GRANTED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of January, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE